UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TYRUS D. COLEMAN,

Petitioner,

v.   CAUSE NO.: 3:16-CV-301-PPS-MGG

SUPERINTENDENT,

Respondent.

OPINION AND ORDER

Tyrus D. Coleman, by counsel, filed a motion to reconsider the order denying his petition for habeas relief under Fed. R. Civ. P. 59(e). "A court may grant a Rule 59(e) motion to alter or amend the judgment if the movant presents newly discovered evidence that was not available at the time of trial or if the movant points to evidence in the record that clearly establishes a manifest error of law or fact." *Matter of Prince*, 85 F.3d 314, 324 (7th Cir. 1996); *Deutsch v. Burlington N. R.R. Co.*, 983 F.2d 741, 744 (7th Cir. 1992).

Though Coleman petitioned for habeas relief on numerous grounds, the instant motion focuses on his claim under the Double Jeopardy Clause. Specifically, he claims that issue preclusion barred his second trial on the charge for the attempted murder of Anthony Dye because the jury acquitted him on the charge for the murder of Jermaine Jackson at his first trial.

Though I provide a more detailed account in the order denying the petition (ECF 23), I will briefly summarize the relevant events. Coleman was convicted based on an

incident that occurred in his backyard where he first shot Dye and then turned and shot Jackson in quick succession. Dye, who was Jackson's father, survived the shooting. Jackson did not. The entire incident was captured on videotape.

Coleman was charged with murdering Jackson and attempting to murder Dye. At the first trial, the court gave a self-defense instruction to the jury. The jury acquitted Coleman on the murder charge but was unable to unanimously agree on the attempted murder charge. A mistrial was called on the attempted murder count and that charge was set for a retrial. Between trials, Coleman moved for dismissal of the attempted murder count on double jeopardy grounds, arguing that the jury, through the acquittal of Coleman of the Jackson murder, had necessarily credited his self-defense argument and thus, based on the language of the self-defense instruction, necessarily found that he did not commit a crime by shooting Dye. The court disagreed and a second trial ensued. At that retrial, the jury convicted Coleman on the attempted murder charge. On direct appeal, the Court of Appeals of Indiana reversed the conviction based on Coleman's double jeopardy argument. But the Indiana Supreme Court overturned the intermediate appellate court's decision and affirmed the conviction.

In the petition, Coleman claimed that the Indiana Supreme Court made an objectively unreasonable determination by finding that issue preclusion did not apply to the second trial. The Double Jeopardy Clause of the Fifth Amendment "was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." *Green v. United States*, 355 U.S. 184, 187 (1957). The doctrine of issue preclusion "is embodied in the Fifth Amendment

2

guarantee against double jeopardy." *Ashe v. Swenson*, 397 U.S. 436, 445 (1970). This means that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* at 443. "Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Id.*

Upon review of the Indiana Supreme Court decision, I observed a disparity between Coleman's arguments and the Indiana Supreme Court's reasoning. Here's what Coleman argued:

(1) The jury acquitted Coleman of the Jackson murder charge on the basis of self-defense;

(2) For such an acquittal, according to the jury instructions, the jury was required to find, beyond a reasonable doubt, that Coleman did not commit any crime that was "directly and immediately connected to the confrontation";

(3) When considering the charge of murder, the jury interpreted "the confrontation" as the shooting of Jackson -- as opposed to interpreting "the confrontation" as encompassing both the shooting of Dye and the shooting of Jackson.

(4) The shooting of Dye was directly and immediately connected to the shooting of Jackson; and

(5) Therefore, the jury determined that the shooting of Dye was not a crime.

The Indiana Supreme Court construed Coleman's brief as contending that "because of the brief interval between the two shootings, they necessarily amounted to a single transaction" and as arguing that "Coleman's general fear of death or great bodily harm applied equally to [Jackson] and Dye." ECF 7-11 at 5. The court reasoned that the jury could have reasonably found that Coleman acted in self-defense only with respect Jackson. Though the Indiana Supreme Court's reasoning was internally sound, the court misconstrued Coleman's argument; Coleman's argument requires the assumption the two shootings were each separate transactions (or confrontations) and focuses on the language of the self-defense jury instruction. The court did not discuss the jury instruction and thus did not meaningfully address Coleman's argument or the reasoning of the lower appellate court.

Faced with this unusual straw-man situation, I found that this was a case in which "the last state court to render a decision offers a bad reason for its decision" and applied the deferential standard of review set forth in *Brady v. Pfister*, 711 F.3d 818 (7th Cir. 2013), and *Whatley v. Zatecky*, 833 F.3d 762, 775 (7th Cir. 2016), to the judgment of the Indiana Supreme Court.

In accordance with *Ashe*, I examined the record for a possible alternative bases to explain the acquittal. In that process, I considered that one of the things the jury was required to decide was whether Coleman "knowingly" killed Jackson. I noted that, during Coleman's testimony, he did not expressly admit that he had knowingly killed Jackson and testified that "everything went so crazy fast." Trial counsel used this testimony to invite the jury to acquit Coleman based on the "knowingly" element. In

4

making that argument, Coleman's counsel relied on Coleman's testimony as well as the short, three-second duration of the shootings as reflected in the videotape. Ultimately, I concluded that a rational jury could have acquitted Coleman on the grounds that the prosecution had failed to prove beyond a reasonable doubt that Coleman had knowingly killed Jackson. I therefore denied Coleman habeas relief.

Coleman now argues that I should have applied a de novo standard of review. Under this standard, "[i]f the record as a whole supports the state court's outcome . . . the correct result would be to deny the petition for a writ of habeas corpus." *Brady*, 711 F.3d at 827. Even assuming that de novo is the proper standard of review, it would not have changed the decision on the issue preclusion claim. This is not a case in which I disagreed with the State court's judgment but stopped short of finding it unreasonable. Rather, I agree with the judgment of the Indiana Supreme Court and, for the reasons I have stated, would not have granted habeas relief based on the issue preclusion claim even if I had applied the de novo standard of review.

Coleman also argues that the respondent, through counsel, conceded that the jury necessarily acquitted him based on self-defense during oral arguments before the Indiana Supreme Court. "Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them. They may not be controverted at trial or on appeal." *Keller v. United States*, 58 F.3d 1194, 1199 (7th Cir. 1995). "[A] verbal admission at . . . oral argument is a binding judicial admission, the same as any other formal concession made during the course of proceedings." *McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 680 (7th Cir. 2002).

5

Nevertheless, whether to treat an allegation as a judicial admission is discretionary, and the court may allow a judicial admission to be withdrawn. *Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1014 (7th Cir. 2000); *Solon v. Gary Cmty. Sch. Corp.*, 180 F.3d 844, 858 (7th Cir. 1999).

It is true that the respondent's counsel made a statement during oral argument that could have been deemed a judicial admission. But the Indiana Supreme Court did not consider the statement to be binding but instead merely assumed that it was true for the sake of argument. ECF 7-11 at 5. Moreover, the record flatly contradicts the oral argument statement; as I have explained, the record contains at least one alternative rationale for acquitting Coleman. Therefore, I also decline to consider this statement to be a binding judicial admission.

Furthermore, the respondent suggested yet another alternative rationale for the acquittal of Coleman. Recall that Coleman's issue preclusion argument requires the assumption that the jury interpreted the self-defense instruction's reference to "the confrontation" as the shooting of Jackson separate and apart from the shooting of Dye. The respondent argued that the jury may have rationally interpreted "the confrontation" as encompassing the events from the time Jackson arrived at Coleman's recording studio until the shooting of Jackson. ECF 7 at 12-13. This would also include the shooting of Dye. Under this interpretation, the jury could have found that Coleman did not commit any crime that was "directly and immediately connected to the confrontation" without consideration of whether the shooting of Dye was a crime. Significantly, the jury was presented with a single self-defense instruction for both

6

charges; the jury instructions did not define "confrontation"; and the two shootings occurred over the course of three seconds. Considering the foregoing, the jury could have rationally interpreted "the confrontation" as encompassing both shootings and then rationally acquitted Coleman based on this broader interpretation.

Coleman further argues that I improperly considered the hung count as part of the issue preclusion analysis, relying on *Yeager v. United States*, 557 U.S. 110 (2009), which holds that "the consideration of hung counts has no place in the issue-preclusion analysis." In the opinion denying the habeas petition, I outlined Coleman's argument that, by acquitting Coleman of murdering Jackson, the jury determined that Coleman did not commit a crime by shooting Dye. I then posited, "why then did the jury not acquit him of the attempted murder?" This was a rhetorical question meant to highlight the paradoxical nature of Coleman's argument: taking Coleman's argument at face value means that the jury unanimously decided that Coleman's shooting of Dye was not a crime while simultaneously declining to acquit Coleman for attempting to murder Dye.

In generally prohibiting the consideration of hung counts, the primary concern of the United States Supreme Court was to prevent courts from speculating about a jury's reasoning for what amounts to a legal nullity. *Yeager*, 557 U.S. at 122 (2009). The rhetorical question was not speculation; it was a simple observation that, as the Supreme Court has recognized, a hung count represents "a jury's failure to reach a decision." *Bravo-Fernandez v. United States*, 137 S. Ct. 352, 360 (2016).

Coleman next argues that I should have issued a certificate of appealability on the issue preclusion claim. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). After considering the arguments presented in the instant motion, I find that a reasonable jurist could agree that this petition should have been resolved in a different manner. Therefore, I grant a certificate of appealability on the issues of the proper standard of review for the issue preclusion claim and whether, under that standard, the issue preclusion claim entitles Coleman to habeas relief.

As a final matter, I note that attorneys Branka Cimesa and Jennifer H. Berman entered their appearance on behalf of Coleman, who had filed and litigated this case, except for the instant motion, as a pro se litigant. Regardless of whether I agree with their arguments, I commend Ms. Cimesa and Ms. Berman for their excellent representation of Coleman and their vigorous advocacy towards that end.

For these reasons, the court:

(1) GRANTS the motion to alter judgment (ECF 27) with respect to the certificate of appealability but DENIES the motion in all other respects; and

(2) GRANTS a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

SO ORDERED on September 20, 2018.

s/ Philip P. Simon
                                             JUDGE
                                             UNITED STATES DISTRICT COURT